UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA

-against-

TAIROD NATHAN WEBSTER PUGH,

                              Defendant.
-------------------------------------------------------------------X

MEMORANDUM & ORDER

15-CR-116 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

      This Memorandum and Order addresses the Government's motion to empanel an anonymous jury for the upcoming trial in this case. Jury selection is scheduled to begin on February 8, 2016. The Government requests that "the names, precise addresses and workplaces of members of both the <u>venire</u> and <u>petit</u> juries not be revealed, that the jurors be kept together during recesses and taken to or provided lunch as a group each day during trial, and that they be escorted to and from the courthouse each day during trial in a manner to be arranged by the United States Marshals Service." (Gov't's's Mem. in Supp. of Mem. for Anon. Jury ("Gov't's Mem.") (Dkt. 31) at 2.)

      The Government argues that the use of an anonymous, semi-sequestered jury is warranted because this case involves charges of terrorism relating to an extremely violent terrorist organization and has attracted, and will likely continue to attract, significant media attention. Defendant opposes the use of an anonymous jury, arguing that it would unfairly prejudice him and that it is not justified by the facts in this case. (<u>See</u> Def.'s Mem. in Mem. to Gov't's Mem. for Anon. Jury ("Def.'s Mem.") (Dkt. 42).)

      In determining whether to empanel an anonymous jury, the court must strike a balance "between the integrity of the criminal justice system and the jurors' concern for their own well-being[,] and the preservation and meaningful efficacy of the presumption of innocence." <u>United</u>

1

States v. Bellomo, 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003). For the reasons that follow, the court has determined that this balance weighs in favor of empaneling an anonymous and semi-sequestered jury. Accordingly, the Government's motion is GRANTED.

## I. BACKGROUND

### A. Charged Criminal Conduct

Defendant is charged with attempting to provide material support to the Islamic State of Iraq and the Levant ("ISIL"), by attempting to join ISIL, and obstruction of an official proceeding, namely, the destruction of certain flash drives in order to obstruct the grand jury investigating his material support charge. (Indictment (Dkt. 11).) According to the Government, ISIL is a foreign terrorist organization that has existed, in one form or another, since approximately 2004. (Gov't's Mem. at 4.) Since 2013, ISIL has claimed credit for numerous terrorist attacks and has seized control over large swaths of Iraq and Syria. (Id. at 5, 6.) Additionally, ISIL has taken numerous hostages, including American journalists. (Id.)

Recently, ISIL has been linked to numerous terrorist attacks outside of the Middle East, see Karen Yournish, Derek Watkins, and Tom Giratikanon, Recent Attacks Demonstrate Islamic State's Ability to Both Inspire and Coordinate Terror, N.Y. Times, Dec. 7, 2015, including at least one attack in the United States, see Michael S. Schmidt, San Bernardino Gunwoman Pledged Allegiance to ISIS, Officials Say, N.Y. Times, Dec. 4, 2015.

## II. LEGAL STANDARD

"Anonymous juries are empaneled in order to protect jurors from harm, to address concerns of jurors regarding their safety, and to prevent potential jury tampering." United States v. Khan, 591 F. Supp. 2d 166, 169 (E.D.N.Y. 2008) (quoting United States v. Gammarano, No. 06-CR-72 (CPS), 2007 WL 2077735, at *4 (E.D.N.Y. July 18, 2007)). Yet empaneling an

2

anonymous jury also presents "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989). Thus, in resolving a motion for an anonymous jury, "courts must balance 'the defendant's interest in conducting meaningful voir dire and in maintaining the presumption of innocence, against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.'" United States v. Taylor, 17 F. Supp. 3d 162, 183 (E.D.N.Y. 2014) (quoting United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007)).

The Second Circuit has consistently "made clear that 'when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights.'" United States v. Kadir, 718 F.3d 115, 120 (2d Cir. 2013) (quoting United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012)). It has also explained, however, that the "analysis of the potential constitutional impact of an anonymous jury on a defendant 'must receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense.'" Taylor, 2014 WL 1653194, at *16 (quoting United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991)). After conducting this analysis, "a court may order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." Pica, 692 F.3d at 88 (quoting United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006)). "Within these parameters, the decision whether or not to empanel an anonymous jury is left to the district court's discretion." Id. (quoting Gotti, 459 F.3d at 345).

In determining whether there is strong reason to believe the jury needs protection, courts in this circuit have considered various factors, "including whether (1) the charges against the

3

defendants are serious, (2) there is a substantial potential threat of corruption to the judicial process, and (3) considerable media coverage of the trial is anticipated." United States v. Al Fawwaz, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014). While "it is unclear whether any of these factors individually justify impaneling an anonymous jury," "there are numerous cases indicating that anonymity is appropriate when some combination of these factors is present." Khan, 591 F. Supp. 2d at 169 (citing Quinones, 511 F.3d at 296). As the Second Circuit has explained:

> Sufficient reason for empaneling an anonymous jury has been found to exist where, for example, the defendants were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several mob-style killings, and there was strong evidence of defendants' past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors; or where the defendants have been charged with grand jury tampering and the trial is expected to attract publicity, . . ; or where the defendant has a history of attempted jury tampering and a serious criminal record, . . . ; or where there had been extensive pretrial publicity and there were abundant allegations of dangerous and unscrupulous conduct.

Paccione, 949 F.2d at 1192 (internal citations and quotation marks omitted).

"If a district court determines that an anonymous jury is appropriate, the court must take 'reasonable precautions to minimize any prejudicial effects on the defendant and to ensure protection of his fundamental rights.'" Kadir, 718 F.3d at 120 (quoting United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994)). Indeed, a defendant's fundamental rights "must be protected 'by the court's conduct of a voir dire designed to uncover bias as to issues in the case[] and as to the defendant,' and by 'taking care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities.'" Thai, 29 F.3d at 801 (quoting Paccione, 949 F.2d at 1192); see also United States v. Herron, 2 F. Supp. 3d 391, 396-97 (E.D.N.Y. 2014).

4

## III. DISCUSSION

After considering each of the relevant factors, the court concludes that the balance of the interests ultimately weighs in favor of empanelling an anonymous, semi-sequestered jury.

### A. Need for Protection

With respect to the first prong of the analysis, the Government argues that each of the charges are serious, Defendant's potential ties to ISIL place the judicial process at risk, and there has been, and will continue to be, extensive media coverage of the case. (Gov't's Mem. at 15-18.) In maintaining that there is a "strong reason" to believe that the jury needs protection in this case, the Government further asserts that "[t]he possibility that a terrorist organization, the defendant, his associates, or their sympathizers, will target members of the jury in this case is a valid concern for potential members of the jury pool who may fear that disclosure of their identities or information about their families or workplaces may expose them to unnecessarily heightened risk." (Id. at 17.) Defendant, however, contends that evaluating each sub-factor weighs against finding an anonymous jury is warranted. (Def.'s Mem. at 14-19.) Most significantly, Defendant insists that "[e]ven in a trial involving terrorism, there must be something more than the mere invocation of ISIS or al-Qaeda to justify encroaching on the defendant's right to a fair trial and an impartial trier of fact. In Pugh's case, there is nothing more." (Id. at 3.) Ultimately, Defendant argues that the "the government's proposed measures would only have the effect of <u>increasing</u> the jurors' fear of Pugh and would severely prejudice him by making him appear guilty in their eyes before the trial even begins." (Id. at 6 (emphasis in original).) While these concerns are always present when a court evaluates any motion to empanel an anonymous jury, here, the court has determined that the public's interest in the

5

integrity of the criminal justice system and the jury's interest in remaining free from real or threatened violence are more substantial.

1. <u>Seriousness of the Charges</u>

A court evaluates a defendant's dangerousness by assessing the seriousness of the crimes charged and whether the defendant is charged with participating in a large-scale criminal enterprise. <u>See, e.g.</u>, <u>Gotti</u>, 459 F.3d at 346 (observing that defendants were charged with both membership in and leadership of an organized crime family, and that defendants had been detained pending trial due to their dangerousness); <u>Wilson</u>, 493 F. Supp. 2d at 399-401 (observing that defendant was charged with murdering two police officers and was a member of a violent criminal gang). However, the nature of the charges against a defendant "does not, <u>ipso facto</u>, require" empanelling an anonymous jury. <u>United States v. Mostafa</u>, 7 F. Supp. 3d 334, 336 (S.D.N.Y. 2014) ("Indeed, to so find would run counter to the cloak of innocence that surrounds any defendant on trial in this country."). Moreover, "the mere invocation of the words 'terrorism' or 'al Qaeda' are insufficient alone to justify an anonymous jury"—something more is required. <u>Al Fawwaz</u>, 57 F. Supp. 3d at 309 (citing <u>Vario</u>, 943 F.2d at 241.)

> This "something more" can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and [their] associates such as would cause a juror to reasonably fear for his own safety.

<u>Vario</u>, 943 F.2d at 241; <u>see also</u> <u>United States v. Millan-Colon</u>, 834 F. Supp. 78, 84 (S.D.N.Y. 1993) ("Before a district judge may rely on the organized crime connection of a defendant as a factor in the question of anonymous juries, he must make a determination that this connection has some direct relevance to the question of juror fears or safety in the trial at hand, beyond the innuendo that this connection conjures up.").

6

According to the Government, Defendant attempted to join ISIL. (Gov't's Mem. at 3.) Although Defendant's alleged affiliation with a violent terrorist organization, by itself, is insufficient to warrant empanelling an anonymous jury, see Vario, 943 F.2d at 241; here, the Government indicates that "defendant has shown a potential for politically motivated violence targeted against American interests by attempting to join ISIL. Furthermore, ISIL has carried out attacks against Westerners abroad and has publicly expressed a desire to carry out attacks on the U.S. homeland or installations abroad." (Gov't's Mem. at 10-11.) Defendant does not dispute that the crimes he is charged with committing are serious. (See Def.'s Mem. at 12 ("Undoubtably, Pugh faces serious charges.").)[1] Instead, Pugh argues that "[u]nder the facts proffered by the government, it would be mere speculation to conclude that Pugh somehow poses a threat to the jury." (Id. at 13.)

Defendant's argument misses the mark. The question is not whether Defendant himself poses a threat to the jury, but rather whether there is good reason to believe that the jury needs protection. United States v. Stewart, 590 F.3d 93, 123 (2d Cir. 2009). The court finds that, here, there is good reason to so believe.

As the Government notes, "ISIL has carried out attacks against Westerners abroad and has publicly expressed a desire to carry out attacks on the U.S. homeland or installations abroad." (Gov't's Mem. at 11.) Defendant counters that the threat of ISIL is overstated on

---

[1] Defendant further highlights that he" has steadfastly maintained his innocence. He has consistently said that he traveled to Turkey in order to find work . . . ." (Def.'s Mem. at 13.) However, "[d]espite the unproven nature of charged conduct, 'what crimes a defendant has been charged with in an indictment are a relevant and appropriate consideration in determining whether to empanel an anonymous jury." Herron, 2 F. Supp. 3d at 398 (alterations removed) (quoting United States v. Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *7 n.5 (E.D.N.Y. Aug. 5, 2011)); see also United States v. Mayes, No. 12-CR-385 (ARR), 2013 WL 6175824, at *4 (E.D.N.Y. Nov. 25, 2013) ("As the defendants note, the government has presented accusations, not proof, and the defendants are not charged in the indictment with witness tampering, jury tampering, or obstruction of justice. . . . Still, the court can rely on the government's proffer of facts to determine whether there is reason to believe that the jury needs protection." (internal citations and footnote omitted)); Gotti, 459 F.3d at 346. Moreover, the Second Circuit has repeatedly held that district courts are not obligated to conduct evidentiary hearings regarding the prosecution's allegations in support of an anonymous jury motion. See Kadir, 718 F.3d at 121. Accordingly, Pugh's claimed innocence does not counsel against an anonymous jury.

American soil. (Def.'s Mem. at 15-17). The court disagrees for three reasons. First, recent events belie Pugh's claim that ISIL is not dangerous on American soil. See Michael S. Schmidt, San Bernardino Gunwoman Pledged Allegiance to ISIS, Officials Say, N.Y. Times, Dec. 4, 2015. Second, the threat posed by ISIL is particularly acute in this case. ISIL has repeatedly expressed a desire to attack American law enforcement personnel. (See Gov't's's Reply Mem. in Supp. of Mem. for an Anonymous Jury ("Gov't's Reply") (Dkt. 46) at 5-6 (detailing ISIL's call to murder 100 U.S. service members and cases in the Eastern District in which ISIL supporters have been charged with, inter alia, attempting to murder law enforcement officers).) Consequently, there is a reasonable risk that ISIL or its affiliates could target the jury. Third, ISIL has adopted a new model of terrorism. As James Comey, director of the Federal Bureau of Intelligence, has stated that ISIL "have adopted a model that takes advantage of social media in a way to crowd-source terrorism. . . . [T]hey are preaching through social media to troubled souls urging them to join their so-called 'Caliphate' in Syria and Iraq, or if you can't join, kill where you are." (Gov't's Reply at 5 (quoting James Comey, Address at the Aspen Institute (July 22, 2015) (transcript available at: http://aspensecurityforum.org/wp-content/uploads/2015/07/The-Complexity-of-Todays-Global-Threat-Environment.pdf)).) Accordingly, the threat posed by ISIL is not limited by its geographic control, or indeed its members, but instead can extend to sympathetic lone-wolves.

Accordingly, the court finds that both Defendant's and ISIL's dangerousness weigh heavily in favor of empanelling an anonymous jury.

    2.    <u>Substantial Potential Threat of Corruption to the Judicial Process</u>

The next factor courts consider in determining whether there is strong reason to believe the jury needs protection is whether there is substantial reason to believe there is a threat to the

judicial process. In this analysis, courts traditionally look at two types of evidence. First, courts examine evidence of prior attempts by the defendant to engage in intimidation or bribery of, or violence toward, either witnesses or jurors. See, e.g., United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995) (noting defendants had an associate threaten a witness's life and offer $50,000 for the witness's silence); Paccione, 949 F.2d at 1192-93 (noting that government witness had received anonymous, middle-of-the-night phone calls advising him to "remember [] nothing" and that a defendant had threatened others with a baseball bat and pistol); Vario, 943 F.2d at 240 (noting co-conspirator had approached a grand jury witness). Second, courts consider whether, given the context of the case, there is reason to believe that jurors "would fear reprisal." Al Fawwaz, 57 F. Supp. 3d. at 309.

    *a.    Obstruction of Justice*

The charges brought by the government, along with the representations the Government has provided regarding ISIL generally, counsel in favor of juror anonymity and partial sequestration.

As a general matter, courts have found that egregious defense conduct towards the judicial process warrants an anonymous jury. For example, in United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007), the Second Circuit approved the use of an anonymous jury where "[t]he indictment specifically charged defendants with murdering a confidential informant in retaliation for his cooperation with law enforcement authorities." However, and especially in conjunction with other factors, there is no requirement that a defendant's contempt for the judicial process rise to the level of murder or outright juror intimidation before an anonymous jury is justified. "Notably, to support a finding that an anonymous jury is warranted, obstruction of justice charges need not relate to prior jury tampering efforts, but instead may relate solely to efforts to tamper with witnesses or otherwise obstruct the judicial process." United States v.

9

Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *3 (E.D.N.Y. Aug. 5, 2011). Accordingly, courts have found that an anonymous jury may be needed where a defendant's conduct demonstrates disrespect for the judicial process. United States v. Ashburn, No. 13-CR-303 (NGG), 2014 WL 5800280, at *8 (E.D.N.Y. Nov. 7, 2014) (surveying the defendants' disrespectful behavior and finding "[a]s a result, Defendants' lack of respect for the judicial process suggests there is a serious need to protect the jury in this case.").

Here, Defendant is charged with obstruction, and attempted obstruction, of an official proceeding. (Indictment at 2.) Specifically, the Government alleges that Defendant knowingly destroyed four USB thumb drives in order to prevent their use before the grand jury investigating his alleged attempt to provide material support to ISIL. (Id.; see also Gov't's Mem. at 7 ("FBI agents took possession of the defendant's Electronic Devices on January 11, 2015, transported the Electronic Devices to the United States, and obtained a warrant to search the devices. The ensuing search revealed that the internal memory chips had been removed from four of the five damaged thumb drives.").) The court finds that this "lack of respect for the judicial process suggests there is a serious need to protect the jury in this case." Ashburn, 2014 WL 5800280, at *8.

b. *Reasonable Jury Fear of Retaliation*

Of more significance, the court finds that there is a significant risk that jurors would fear reprisal without anonymity. "ISIL has carried out attacks against Westerners abroad and has publicly expressed a desire to carry out attacks on the U.S. homeland or installations abroad." (Gov't's Mem. at 10-11.) These attacks have garnered significant media attention. (See id. at 11 n.12. (documenting media coverage of ISIL attacks).) Indeed, ISIL has published a video specifically targeting New York City, to which Mayor de Blasio has publicly responded. (Gov't's Reply at 7.) Given these facts, the court finds it likely that a reasonable juror would

10

fear for her safety when confronted by the facts charged in this case. See Al Fawwaz, 57 F. Supp. 3d at 309 ("[T]he specific charges in this case raise a reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety." (internal quotation marks and citation omitted)); see also United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009). In such circumstances, the Second Circuit suggests the use of an anonymous jury: "If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires?" United States v. Barnes, 604 F.2d 121, 140-41 (2d Cir. 1979).

### 3. Publicity

The final factor to consider is whether the trial is likely to attract media attention and publicity. The Government argues that "foreign and domestic media organizations have tracked this case since the defendant was indicted." (Gov't's Mem. at 17.) In support, the Government cites several articles published by a range of news outlets, including NBC News, CBS News, CNN, Newsweek, Newsday, the International Business Times, The New York Times, the New York Daily News, the New York Post, and the Washington Post. (Id. at 11-12 n.13.) Defendant counters that although there was press surrounding his plea, "[i]n the eight months since [Pugh's plea], there has been complete silence" (Def.'s Mem. at 18), and much of the press concerning the indictment tracked the Government's press release (id.). That argument may have been true when Defendant submitted his brief, but now it is not; indeed, the press covered the Government's motion for an anonymous jury. See Selim Algar, Prosecutors Fear ISIS Attacks on Juror in Air Force Vet's Trial, N.Y. Post, Nov. 25, 2015.[2]

---

[2] Defendant further argues that "[i]n the event such media interest never materializes, however, what conclusion will the jury draw? It is likely that they will realize that they have been lied to and infer that their identities were hidden for their protection. Then, the supposedly benign explanation would be even more prejudicial to Pugh than no explanation at all." (Def.'s Mem. at 18-19.) The court finds this hypothetical unlikely. Moreover, the Second

11

Moreover, Defendant's position is not supported by the caselaw. First, the analysis does not turn on the volume of pre-trial news coverage alone; rather, courts consider both the amount and nature of the publicity. For example, in Vario, the Second Circuit held that the district court did not err in finding that there was a possibility of significant media attention, "even though only one article had been written prior to the trial[,] since that article was a Newsday cover story that 'detailed the extensive nature of the conspiracy charged.'" United States v. Gammarano, No. 06-CR-072 (CPS) 2007 WL 2077735, at *6 n.27 (E.D.N.Y. July 18, 2007) (quoting Vario, 943 F.2d at 240). Second, the issue is not whether the pre-trial media attention has been significant on its own, but whether this attention reasonably suggests that there will be significant news coverage during the trial. See Vario, 943 F.2d at 240 ("Although no publicity followed this initial article, we cannot say that at the time that the anonymous jury motion was made, the government's prediction that publicity would continue was unreasonable or unjustified," even though "later developments may have proved this prediction wrong.").

Here, the Government has offered evidence that Defendant's plea alone garnered significant media attention. (Gov't's Mem. at 11-12.) Given the numerous press reports related to the plea, the court can reasonably anticipate that media attention is likely to be substantial during the trial itself. See Herron, 2 F. Supp. 3d at 397-98 ("Although Defendant argues that the lack of recent media attention demonstrates that interest has abated . . . the court finds that with the increased case activity associated with trial, it is reasonable to expect renewed media scrutiny."); see also Bellomo, 263 F. Supp. 2d at 559 ("This case has already attracted pretrial

---

Circuit "has repeatedly held that a defendant's presumption of innocence is properly maintained where the court gives a neutral and non-prejudicial explanation to the jury regarding the need for anonymity." United States v. Prado, No. 10-CR-74 (JFB), 2011 WL 3472509, at *9 (E.D.N.Y. Aug. 5, 2011). In any event, the court emphasizes that these are not unusual procedures. See United States v. Locascio, 357 F. Supp. 2d 558, 560 (E.D.N.Y. 2005) ("[I]t is an unfortunate reality that a significant number of the cases tried in this district have required proceeding with such a selection process."). It is well-established that these explanations are plausible, appropriate, and nonprejudicial. See, e.g., United States v. Kadir, 718 F.3d 115, 120-21 (2d Cir. 2013); see also infra Part III.B.

publicity, but hardly as much as it will surely attract when the trial gets underway."). Significant media attention and publicity are even more likely as a result of Defendant's alleged association with ISIL. See, e.g., Al Fawwaz, 57 F. Supp. 3d at 309 ("[T]he recent escalation of hostilities in Syria and Iraq presages an even greater amount of attention for this trial."). Therefore, the court has no difficulty in concluding that the "prospect of publicity militates in favor of jury anonymity to prevent exposure of the jurors to intimidation or harassment." United States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994) (citing Vario, 943 F.2d at 240).

    4.    Conclusion

In sum, the court's analysis of the relevant factors demonstrates that based on the totality of the circumstances, there is "strong reason" to protect the jury in this case. See Locascio, 357 F. Supp. 2d at 560.

Moreover, this analysis further warrants daytime sequestration of the jury and transport to and from the courthouse by the United States Marshals Service. The court is convinced that semi-sequestration is the only way to adequately protect the jury. See Wilson, 493 F. Supp. 2d at 400. In light of the violent nature of the crimes charged and of ISIL more generally, and the likelihood of significant press attention to this case, there is a serious risk that jurors will be subject to inappropriate contact from either the media or ISIL sympathizers. The court does not, however, take lightly the concern that semi-sequestration could give rise to the possibility of prejudice to Defendant. See, e.g., Thomas, 757 F.2d at 1364 (noting that "the presumption of innocence is of significant importance"). Accordingly, as explained below, the court will take great care to provide the venire with a plausible and nonprejudicial explanation for these additional measures.

### B. Reasonable Precautions

Having concluded that an anonymous and semi-sequestered jury is warranted, the court must consider what precautions can be taken to minimize any potential prejudicial effect these measures might otherwise have on Defendant. See United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994) ("If an anonymous jury is warranted, a defendant's fundamental rights must be protected by the court's conduct of a voir dire designed to uncover bias as to issues in the cases and as to the defendant, and by taking care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities." (citation and internal quotation marks omitted)). The court believes that a juror questionnaire is likely necessary in light of this ruling and the jury will need to be given a plausible, neutral explanation for its anonymity and semi-sequester. The parties should consider and be prepared to discuss what, in their view, is a reasonable precaution during the December 11, 2015 status conference.

## IV. CONCLUSION

Having balanced Defendant's interests in conducting meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict, the court has determined that an anonymous and semi-sequestered jury is warranted. Therefore, the Government's motion is GRANTED.

Accordingly, the court will withhold the full names, precise addresses, and workplaces of members of both the venire and petit juries. Prospective jurors may, however, be required to disclose the general neighborhood in which they live, as well the nature of their employment. In addition, the jurors will be kept together during recesses and provided lunch as a group each day

during trial, and the jurors will be escorted to and from the courthouse each day during trial in a manner to be arranged by the United States Marshals Service.

SO ORDERED.

Dated: Brooklyn, New York
December 9, 2015

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge