UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
UNITED STATES OF AMERICA                                       :
                                                              :    Docket No.: 15-CR-116 (NGG)
    -v-                                                        :
                                                              :
TAIROD NATHAN WEBSTER PUGH                                     :
                                                              :
    Defendant.                                                :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**TAIROD PUGH'S MOTION IN LIMINE TO PRECLUDE
THE ADMISSION AT TRIAL OF A DRAFT LETTER TO HIS SPOUSE**

CREIZMAN PLLC
Eric M. Creizman
Zachary S. Taylor
565 Fifth Avenue, 7th Floor
New York, New York 10017
Tel.:  (212) 972-0200
Fax:  (646) 200-5022
Email: ecreiz@creizmanllc.com

Attorneys for Tairod Pugh

January 11, 2016

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................ 1

ARGUMENT ........................................................................................................... 2

    I.    ALL CONFIDENTIAL COMMUNICATIONS BETWEEN PUGH AND M.H.S. SHOULD BE EXCLUDED FROM THE EVIDENCE AT TRIAL, INCLUDING THE DRAFT LETTER FOUND ON PUGH'S LAPTOP. ........................................................... 2

    II.    ALL VIDEOS AND PHOTOGRAPHS DEPICTING VIOLENCE AND TERRORISM THAT ARE NOT DIRECTLY RELATED TO PUGH'S ALLEGED OFFENSE CONDUCT SHOULD BE EXCLUDED FROM TRIAL. ........................................................ 4

CONCLUSION ....................................................................................................... 6

Tairod Pugh, by his attorneys, respectfully submits this memorandum of law in support of his motion *in limine* precluding the government from introducing into evidence at trial: (1) communications between Pugh and his wife, including a draft letter from Pugh to his wife that was found on his laptop, because it is precluded under the marital communications privilege; and (2) videos or photographs depicting violence or acts of terrorism that are not directly related to Pugh's alleged acts.

## FACTUAL BACKGROUND

In April 2014, Pugh married M.H.S., an Egyptian citizen who resides in Aswan, Egypt. *See* Exhibit A (official marriage documents). After Egyptian authorities detained Pugh on January 10, 2015, they seized his possessions, including his laptop computer, and handed them over to the FBI. (Complaint ¶ 20). The government subsequently searched Pugh's laptop computer, pursuant to a warrant. (*Id.* ¶ 22). On the laptop, the FBI found a letter addressed to "My Misha," which was drafted between January 3 and January 5, 2015. (*Id.* ¶ 24). "Misha" is Pugh's wife, M.H.S. (*Id.*). The letter states, in part:

> I am a Mujahid. I am a sword against the oppressor and a shield for the oppressed. I will use the talents and skills given to me by Allah to establish and defend the Islamic States. There is only 2 possible outcomes for me. Victory or Martyr. If Allah gives us Victory we will have a home in Al-sham. I will send for you when it is safe. You will have a nice home around believers. If I am made a martyr we will have a mansion of indescribable beauty on a magnificent plot of land. The land under a whip is worth more than the world and all it contains.
>
> I calculated my worth in Dunya. I would usually sell myself for $1,000 a week, that would be ½ a million dollars for 10 years. If I sell myself to Allah: 1 night guarding the borders for the sake of Allah is worth more than the world and all it contains.

(*Id.*).

Pugh's electronic devices also contained a substantial amount of violent ISIS and other terrorist propaganda videos and photographs, which were recovered pursuant to executed warrants.

### ARGUMENT

I.   **All confidential communications between Pugh and M.H.S. should be excluded from the evidence at trial, including the draft letter found on Pugh's laptop.**

The "marital communications privilege," protects "[c]ommunications between the spouses, privately made, [that] are generally assumed to have been intended to be confidential." *Wolfle v. United States*, 291 U.S. 7, 14 (1934). The privilege applies to "communications made in confidence during a valid marriage." *In re Witness Before Grand Jury*, 791 F.2d 234, 238 (2d Cir. 1986). *See also United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) ("The [marital communications] privilege (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, *i.e.*, those not made in the presence of, or likely to be overheard by, third parties."). The government bears the burden of showing that the communication was not intended to be confidential. *See Pereira v. United States*, 347 U.S. 1, 6 (1954) ("Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private.").

The purpose of the marital communications privilege is to foster unfettered communications between spouses, and to "provide[] assurance that all private statements between spouses – aptly called the 'best solace of human existence' – will be forever free from public exposure." *In re Witness Before Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986) ("The confidential communications privilege, by contrast,") (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). *See also, Wolfle*, 291 U.S. at 14 ("The basis of the immunity given to

2

communications between husband and wife is the protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails.").

Based on the Complaint and the government's prior filings in this case, we anticipate that the government will seek to introduce at trial the draft letter from Pugh to M.H.S. that was found on Pugh's laptop. The Court should preclude the government from doing so. *First*, Pugh and M.H.S. were in a validly recognized marriage. *See* Ex. A. *Second*, the letter was plainly intended to be a confidential communication to Pugh's wife, and so long as the letter remained on his laptop computer, Pugh had a reasonable expectation of privacy with respect to the letter. *See United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004).

The fact that the government found the letter pursuant to a search warrant does not vitiate the privilege. *See Montgomery*, 384 F.3d at 1057. In *Montgomery*, a husband, his wife, and his sister were charged with conspiracy to commit mail fraud in connection with their fraudulent operation of a rental vacation unit management company. *Id.* at 1054-1055. Before the wife joined the conspiracy, she left a letter for her husband on the kitchen counter of their home, stating that she would not "be part of a dishonest operation," would not prepare owners' statements unless his "sister stops stealing," and would not solicit new owners because they "will probably be cheated." *Id.* at 1054. The court held the district court erred in admitting the letter at trial because the communication was intended for the husband and left in a place where there was a reasonable expectation that the communication would be confidential. *Id.* at 1056-1058.

Here too, Pugh's draft was addressed to his wife, and by its substance and location on his laptop, the evidence suggests that it was intended to be kept confidential and meant for his wife's

3

eyes only. The purposes of the marital communications privilege would be frustrated if the draft letter were admitted at trial in this case.

Accordingly, the Court should preclude the government from offering this letter or any other confidential communications between Pugh and M.H.S. at trial.

## II.   All videos and photographs depicting violence and terrorism that are not directly related to Pugh's alleged offense conduct should be excluded from trial.

Pugh is charged with attempting to provide material support, in the form of his own services, to ISIS under Section 2339B. Significantly, Pugh is not charged or alleged to have attempted to assist ISIS in carrying out an act of terrorism or violence, conduct that would be prohibited under Section 2339A. To the extent the government seeks to introduce videos depicting violent acts of terrorism or other highly prejudicial videos, they must bear some relationship to the offense, or otherwise they should be excluded under Rule 403 of the Federal Rules of Evidence. Indeed, violent and offensive ISIS videos as a general matter are devoid of any probative value with respect to this case and would thus be substantially outweighed by the danger of unfair prejudice. Furthermore, the introduction of such videos would potentially mislead the jury to believe that general acts of violence and terrorism are at issue and thus would confuse the issues that are relevant to whether Pugh is guilty of the crimes he is charged with beyond a reasonable doubt.

The Second Circuit has provided guidance on this very issue in *United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2007). There, the court reversed defendants' convictions of material support to Hamas and Al-Qaeda under Section 2339B based on the introduction of highly prejudicial evidence concerning general terrorist acts of Hamas and Al-Qaeda that should have been excluded under Rule 403. For example, at trial, the district court permitted the government to introduce the testimony of a victim of a bus bombing in Tel Aviv for which

4

Hamas was responsible. *Id.* at 152. The Second Circuit held that such testimony was erroneously admitted under Rule 403, because the "defendants were not charged with planning or carrying out the Tel Aviv bus bombing" or any other terrorist act." *Id.* at 160. Furthermore, defendants never "denied knowing about Hamas's involvement in violent acts and they both offered to stipulate as to that knowledge, essentially limiting the government's burden of proof." *Id.* Thus, for the same reasons, the court held that it was reversible error to admit testimony about an Al-Qaeda training camp, "and particularly the government's presentation of images of Bin Laden and Al-Zawahiri," because, "in light of [the defendants'] concessions," the testimony was "highly inflammatory and irrelevant." *Id.* at 163.

Here, like the defendants in *Al Moayad*, Pugh is prepared to stipulate that he knew at all relevant times that ISIS had engaged in violent acts of terrorism. Accordingly, we respectfully request that the Court preclude the government from offering any videos or photographs of violence or terrorism that do not relate to the conduct for which Pugh is charged with violating Section 2339B.

5

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the admission at trial any

evidence: (i) constituting confidential communications between Pugh and M.H.S., including the

draft letter from Pugh to M.H.S. found on Pugh's laptop, and (ii) of violent or otherwise highly

inflammatory terrorist propaganda that have nothing to do with Pugh's alleged criminal conduct.


Dated:  January 11, 2016
      New York, New York


                                         Respectfully submitted,

                                         /s/ Eric M. Creizman
                                         Eric M. Creizman
                                         CREIZMAN LLC
                                         565 Fifth Avenue
                                         New York, NY 10017
                                         Tel. (212) 972-0200
                                         Fax (646) 200-5022
                                         ecreiz@creizmanll.com

                                         *Attorneys for the Defendant,*
                                         *Tairod Nathan Webster Pugh*

6